Case number 18-758A, Investment, LLC of Holmes v. District of Columbia, SL. Mr. Stout, please come to the front. Mr. Nagy, please come to the other side. Thank you, Mr. Stout. May it please the Court, Jim Stavsky for the Appellant, Edge Investment, LLC. I'd ask the Deputy to reserve two minutes for rebuttal. Seated over my left shoulder in the first row there is Lindy Stevens. I'd be remiss if I didn't compliment her for helping me with this brief. I think one of the reasons we got ten minutes here is because the briefing was well done in the case. She's not admitted here yet. Another matter, Judge, of the case I'll talk about, the Why case, H-O-A-I, was actually decided almost 30 years ago to the day in February of 1989. There were two lawyers on that case who were both lawyers of my firm. One of them is no longer with us and one of them is retired. So 30 years, our firm is litigating the case again on the Colorado River. And there's a good reason for that. Because this Court should not see Colorado River stays with the frequency you're going to see them if this judge's decision is upheld. We go back to the basics. The Colorado River abstention doctrine is the narrowest of abstention doctrines. And it was instituted on very specific facts where the federal court had given a grant of jurisdiction to resolve water rights disputes involving thousands of litigants in different districts in Colorado. If the doctrine had been confined to that, I would agree, extreme case on a wide variety of grounds, then we clearly would have no problem. But it has been applied more broadly to cases where there are issues, essentially issues of state law of complexity and widespread interest. Now, this may not qualify by those criteria. I agree that other circuits and other district courts have taken Colorado River to different places. And I would argue that the Supreme Court has never taken Colorado River. Has this Court ever found Colorado River abstention? Ever? In a decision upholding it? Yeah. No. No. And has the Supreme Court since Colorado River ever? No. And that is precisely the point. That might be the example of rare. Correct. And what this Court found as rare, Judge, as we all know, is routine. This Judge found exceptionality in statutory construction, delegation, the public duty doctrine, due process and demolition cases. And then there was another one I'm forgetting. But these are bread and butter things that courts decide all the time. Well, but they're questions of state law. They seem to be novel. And they seem to bear on structural issues regarding the D.C. government. Yes and no. There are two issues that the Judge decided were, to his view, unique under D.C. law. But those two statutes have nothing to do with the fundamental interest in the case of due process under the Constitution. And those two statutes, if violated, 116801, would provide an additional grounds for why there was a due process violation. Because if a government did something that was illegal under its own statute, then there's a problem. But the fundamental issues in the case are not whether there's a proper delegation of authority, and that's actually a simple issue in interpreting a mayor's order, not whether there was the authority to raise the building. The fundamental issues are why did they not give Edge Investment a hearing? Before the demolition? After the demolition? Before they put liens on his property? After they put liens on his property? And those issues are not unique state issues at all. Those are primarily fundamentally federal issues. One of the claims in the federal case, as I understand it, it's cached as a declaratory judgment claim, but it is the claim that the demolition is unlawful because the D.C. agency didn't have properly delegated authority from the mayor. That is correct, Judge, but the declaratory judgment claim is likely moved now because that statute that existed in 2015 no longer exists in the form that it exists in 2018. So that claim will probably be moved. I'm sorry, I missed it. What's moved? The declaratory judgment statute or the delegation? The declaratory judgment, Judge, was to declare that 6801A did not give the D.C. government the authority to do what they did. Right. That statute has since it existed in 2015 been modified to provide for procedural due process protections that it didn't have before. And there's actually another statute, a quick take statute as well. So 6-801 does not exist in its present form anymore. No, but if the improvement is to ramp up the extent of procedural protection, that doesn't really answer the question whether the mayor can assign the function to the agency delegation question. Well, I still don't think that's a complex issue, Judge of State Law. The statute says the mayor shall examine the structure that is in danger. That's not asking a court to find what's necessary and proper under a due process clause. That's a very distinct mandatory obligation, so I don't even think that's novel at all. I think that's simple. Fair point. But if we're debating the degree of novelty and importance and so on, one difficult point for you is the standard of review, which is abuse of discretion, and that seems to be a little bit in the weeds of the district court's discretionary judgment. Any old question of state law, it's his assessment of this particular one that seems discretionary. On the abuse of discretion standard that applies, we have a difference of opinion with D.C. Water. They are most knowledgeable to throwing out the challenge flag and you have to give deference to the district court unless there's clear and obvious video evidence of review. I don't think you have to give deference to any of the decisions that the judge made along those lines. If they're legal issues, you don't have to give deference. Unless one has a very clear, demanding vision of Colorado River extinction, which may be the right vision, unless you have that, this is exactly the sort of case where we do defer to district judges, which is a wide array of complicated little issues, which fit in, and we expect the district court to weigh those complicated issues and we give up any hope of being able to provide clear guidance because there are so many different variables. We can't predict today all the different cases that could arise, but I disagree that you have to give the degree of deference to the judge that you would where he's evaluating the credibility of a witness or admissibility of a piece of evidence. Whether the doctrine applies is a legal decision. What is a novel or complex issue, you have the same record that this judge had beforehand. There was no testimony or transcripts to decipher, so you, I do not believe, have to give deference to clear errors of law, and there are clear errors of law in this case. The clear errors of law if Colorado River is as sharply confined as the unflagging obligation line suggests. If it's gotten looser, then there isn't a clear error. Well, isn't the question whether any court to which this court has to defer has let it be any looser? The Supreme Court is the only one we have to defer to. It said we have an unflagging obligation. Our court has continued to say it has an unflagging obligation. There's no other authority that can make it any looser. I agree, and I think that there's been mission creep across the board at the district court level, at the circuit level, and it's evident from some of the cases that Judge Kelly cited. You have a Seventh Circuit test that has 12 factors. You have another circuit test that has 10 factors, and the Supreme Court is limited to other factors. I thought that also you point out in your brief, the Supreme Court was quite clear about what abuse of discretion means here, and in a way that it doesn't usually say. That is to say that the district court's discretion is not to say the decision is unreviewable. Such discretion must be exercised under the relevant standard prescribed by this court, namely the Supreme Court. That's correct, and this court, when it had the last chance to look at Colorado Revote in the Hawaii case, said very specifically what piecemeal litigation meant in that context, and it only meant in the context of what Colorado envisioned was a comprehensive state court scheme or some countervailing state interest, and that's where the judge lost it. Some of the factors that the judge applied, novel state court. Has the Supreme Court or our court ever said that that is a factor? I have not seen that in the decision, Judge. Complicated state court. Is that an issue that either the Supreme Court or our court? I haven't seen that language either, Judge. I think the language they used was a vital state interest and a countervailing interest in Moses Cone and in Colorado River. There has to be some vital interest to repair the matter to state court, and here you have fundamentally a due process case, and there's no reason, there's no vital interest in the district government of hearing a substantive due process case or a procedural due process case. And by the way, the government entity, which would be the one that would assert the vital government interest, hasn't made that claim. Can we talk for a minute about the progress of the cases? So as I understand it, when the federal case was filed, you had a couple of dispositive motions adjudicated in Superior Court, and discovery had begun but was ongoing. Is that fair? There were no dispositive motions filed or decided on any issues of a federal variety, on RICO, due process, conspiracy, substantive process. At that time, in D.C. Waters' unrelated negligence litigation, several of the defendants moved to dismiss D.C. Waters' claim for either failing to plead, stated claim that their negligence claim wasn't viable, including the district. So the only dispositive motions that were decided when we filed the federal case in April were all related to defending against D.C. Waters' negligence claim. Their negligence claim against... A couple of people. Right. But that's transactionally related to the counterclaims and the cross-claims. Not at all, Judge. D.C. Waters' case was purely a negligence case. None of the issues that were decided dispositively or otherwise as to their negligence case have any bearing on the due process violations. None. Zero. What's the underlying conduct they said was negligent? I assume it has to do with figuring out whether the building is going to impair the sewer line underneath it. That wasn't out there. There were several defendants. There was a district, and they said that the district was negligent in issuing the permit without D.C. Waters' approval, including the district employees. The negligence claims against Bellow and Bellow, which was a third-party inspector and a permit expediter, where you should have discovered this during the course of your duties. The negligence against the cellar was, I'm not sure of that theory now, but it had nothing to do with due process. And the negligence alleged against Edge was, if you had gone down to the surveyor's office, you would have found some surveys and discovered the existence of the tunnel sewer. Again, none of those issues relate in any way to the substantive, pertential due process issue. Well, except that, I mean, the reason you all are fighting is that this building was demolished, and there are costs associated with that. Edge lost the building, and D.C. Waters had to pay for the demolition, and people are fighting about who is at fault for that unfortunate event. Right. All correct. But whether the building was taken down correctly or not, Edge is still entitled to a hearing, either before demolition or after demolition. So let's assume that they're correct, and all these people were negligent, and the building had to come down, and the government's right. Edge is still entitled to fundamental due process rights, and that's what this case is all about. We'll be able to defend against their negligence claims for a variety of reasons, but the negligence claims of D.C. Water have no bearing on the merits of Edge's due process claims. They just do not, because his due process rights do not change, whether they took the building down. No, but they've raised negligence claims as well as due process claims. They've not raised any due process claims. D.C. Water hasn't. They've only raised negligence claims against those defendants, who, by the way, are not in our case. Edge has raised both types of claims in both forms. Well, that's correct, Judge, and when we had to, because under the Gillis case, which I didn't emphasize enough in my brief, when you have a case filed in federal court, you are required to allege all the claims that you have at that time to test the jurisdiction of the court. So we had to allege the negligence claims that we knew about and all the other claims that we knew about in the federal case to test the court's jurisdiction under that case. I mean, I would be punished for that. I would have thought under normal claim preclusion rules, whether you're in superior court or district court or anywhere else, you'd have to raise all of those claims together precisely because they all arise out of the same transaction or occurrence, which is the demolition of the building. It's true that D.C. has a compulsory counterclaim a little bit more nuanced than you just described, but what happened here is that during the time we first filed the claims in superior court, we learned additional information to support the RICO claims, the Freedom of Information Act violations, the conspiracy, etc. So we did not raise all of the claims that we could have raised then because we just didn't have that information. So from the period that the case was stayed, I didn't just sit around on my laurels. I sent FOIA requests out, and I reviewed the 10,000 documents they produced and generated more FOIA requests, and it was during that time frame that we learned the full scope and extent of how vast the conspiracy was. So just on the discovery, how much discovery had occurred when the federal claim was filed, and then how much has happened since? Eli, I don't think it's permissible, but I'll answer the question to think about what has happened since because we've been doing what the judge did. He's extending the deadline for it. Well, I mean, I get that we're going outside the record, but why? So D.C. Water at the very beginning of the case served comprehensive discovery requests on all the defendants as to the negligence claims except, interestingly, the District of Columbia. There was a stay of discovery initially in that case, going by memory, April of 2016, because there were dispositive motions. And that stay of discovery was not lifted until, I believe, September at a status hearing. Of 17. Of 16. Of 16, right. Right, so we then, discovery is reengaged. EDGE had served discovery requests a couple sets to the district and D.C. Water in the summer of 2016. We got partial responses in October, November. I mean, I guess I don't need all the gory details, but what I'm getting at is, I mean, has this train left the station? If we're two and a half years into discovery in the Superior Court case, assuming it's been ongoing, what's the point at this point in starting from scratch in a federal case? The point is you can't take the train down the station two years later. You have to measure what the judge did at the time he did it, and to hold that delay against us. We can't stay the Superior Court proceeding. I mean, I understand your point that you've been disadvantaged by the passage of time. The answer is yes, we've done more discovery. There's been perhaps 12 to 15 depositions, rough numbers, all of which, mostly of which were taken by D.C. Water. EDGE has taken two. It would be very surprising if that case didn't go to judgment first, and once it goes to judgment, race judicata will attach to it. I disagree because we have still probably 20 or 30 depositions to take. We've got a discovery cutoff now at the end of March. Right, but in the federal case, you haven't even started. Well, we couldn't. Right. Right. And can we not consider that at all? I don't believe you could, because you'd then be punishing us for the delay in the appeal being processed, and that case is going to run, which is— Fair enough, but the alternative is to remand for a fool's errand. Well, I think the alternative is to reverse, for the reasons we've stated. We go back to federal court, and then we do what we did in the state court case, and the judge was receptive to that. And we say, okay, DC Waters negligence claims that that ship has left the train. They go forward. They prove those cases. We defend them. All right, but EDGE's federal claims in the Superior Court case, state, right, and they proceed in federal court. And there's a lot of advantages to that, because we're not dragging in Bellow and Bellow and first-hand LLC, et cetera, into all these due process claims that don't involve them, nor are we involving— So you could seek a stay of the federal claims in Superior Court? Absolutely, which we tried to do, and this is one of the reasons why Judge Kelly committed error, because— And why would the Superior Court, sort of in the reverse Colorado River, be more likely to say, oh, the mere pendency of parallel claims is enough to make us stay? I don't know the answer to what Judge Epstein would do, and I thought were presented to him, but I think he would be quite receptive to the idea of a stay, because it would streamline the negligence case to just the negligence issue and those defendants, and not have to bring in this whole kit and caboodle of new defendants from the federal case. My time is definitely up. I just want to explore this question a little bit more. So in Colorado River itself, the court looked as the key date, the motion to dismiss. It did not look at what had happened to the Supreme Court several years—by the time the case got to the Supreme Court several years later. And here the motion to dismiss was filed—the motion to dismiss on Colorado grounds was filed about a month or two after you filed your federal complaint. Pretty soon, correct. So if you had a different rule, you would probably always have to affirm a dismissal, because by the time it gets to this court, given the length of time it takes to get to this court, it's very likely that things were already going to have continued for another year or two. And if that were the rule, our responsibility to review whether Colorado River decisions are correct would be eliminated, because there would be, as they say, facts on the ground. Well, vis-a-vis this case, Judge, I understand the court's future vision, and I'm glad you're thinking about the future implications of it. I don't think so, per se, because this judge measured the wrong case starting date, for starters, and you have a baby federal case pending at the same time as a baby state case. And I think the unflagging obligation would rule the day, clearly. Yeah, all I'm saying is that if we were to measure by where we are today in every case—that is, by the court of appeals date in every case— that would seem to me to undermine the whole point of Colorado River. It most certainly would, which is why I suggested, I think, that the date the motion was right for review would be a proper measuring point. But what I don't think would be fair would be to allow the delay in the court's deciding the motion. If the Superior Court reaches a conclusion on some elements of this before federal court does, and there is issue preclusion or collateral estoppel, that's just the way it is. That's correct. And the normal decision between a federal court and a state court is that both go on. That's what the Supreme Court said in Colorado. Generally, as between state and federal courts, the rule is the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court. So you'll just be stuck if there's preclusion, and that's just the way it is. That's correct, Judge. And Judge Kelly did not take that into consideration, as some of the other district court judges had, and said, You know what? I'm actually going to have some streamlined issues in my case because some of them will be gone. There's going to be a lot that may not be needed because we'll get that benefit, too. So I think the judge in the Sadler decision, I believe, did it that way and looked at it that way, and I think that's the correct way to look at it. I'm sorry. I may not have gotten exactly in the interchange between yourself and Judge Katz. Has there been discovery on the due process issue? We have served discovery requests to ask for all the communications. In the Superior Court? Yes, yes. And we have done some requests for admissions to get the district to admit that they didn't send out the notice they were required. So, yes, there has. But I reserved the bulk of the discovery related to the due process claims until after the state decision came down, because I'm kind of in a damned-if-you-do, damned-if-you-don't. If I pursue actively due process claims in the Superior Court, then Judge Kelly is going to hold that against me and say my case has progressed further. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. It's true that the Colorado River Doctrine is a narrow doctrine, but it does apply, and it does apply in extraordinary cases. And this is an extraordinary case. Now, what you just heard was the claim that you have some run-of-the-mill negligence case in one court, the Superior Court, and federal claims over here in the Federal Court, and, you know, what are we talking about? But that's not the case. What happened here is it started out as a negligence in D.C. statutory case. Then EDGE comes in and brings the very federal claims that it's bringing in Federal Court in the Superior Court, and it litigates those. That's what always happens. That is the premise. That's the first threshold requirement of Colorado River, there be parallel cases going on in both courts. That's what that section of the Supreme Court's opinion I just read is about. Cases proceed in both courts. So it can't be enough. Maybe you don't like it. I understand. Maybe it seems unfair that you can bring the same case in another court. But that's the system we have. We have federal courts and we have state courts. So this is not enough. This is going to happen in every single case in which Colorado River is claimed. No, Your Honor. With respect, I disagree. In the typical case where a court finds that the claims are the same, perhaps with different names, you generally have claims that are brought by one party in one court and a different party in another. Here you have the unique circumstance in which the same party is trying to litigate the same issues in two courts and by using proxies in the Superior Court is able to obtain certain rulings or attempts to obtain certain rulings. Aren't most of the claims they're raising in the Superior Court either defenses or counterclaims? They are. So it's not as if they filed in both courts. But they filed. They're trying to defend themselves. Look, I have nothing to do on the merits here, okay, just to be absolutely clear. Right. You're the luckiest man in the room in that case, Your Honor. I got it. I got it. And maybe Judge Kelly thought he would be the luckiest person not to have to consider that. Right. But that can't be the question. We have never affirmed a Colorado River case, and neither has the Supreme Court other than Colorado River. And in Colorado River, when they said something was exceptional, rare, narrow, all the cases that the Supreme Court has said, highly unusual, all of those words, those don't seem to me to apply in the same way. I understand maybe this isn't garden variety, but there is a broad spectrum between garden variety on one side and rare, exceptional, narrow on the other side. Well, if I may. Just to define what the Court said was exceptional in the only case that a court with power over us has ever decided. It can involve thousands of separate issues which would have to be decided piecemeal in state court. And a federal statute, the McCarran Act, which wanted all those issues to be decided in state court. We don't have anything exceptional in those terms here, do we? Well, actually we do, Your Honor. As Moses H. Cohen made clear, the fact that the McCarran Act said that there was, or the Supreme Court read the McCarran Act as showing a congressional preference for having these matters, all water rights cases, decided in a single court. Moses H. Cohen made clear that it didn't require that kind of congressional thing. But what Moses Cohen said was, the point was, and what was important in Colorado River, was the need to have, to avoid piecemeal litigation, whether that arose through a statute or not. If the Supreme Court wanted to... That's totally common. Sorry. I'm just going to read from Moses Cohen. We recognize that the amendment, meaning the McCarran Act, represents Congress' judgment that in the field of water rights is one peculiarly appropriate for comprehensive treatment in the state courts. Absolutely. So you just said that Moses suggested that, Moses Cohen, suggested that it wasn't, that that wasn't, that the McCarran Act's view on this wasn't that important. Did I misunderstand your argument? You did, Your Honor. What I'm saying is, you're not saying it wasn't important, but what the court took from that in Moses Cohen was to say, you don't need a federal statute in place, as Edge has suggested. What it says is, there's a very strong importance for avoidance of piecemeal litigation, and as Moses Cohen says, you weigh these factors differently in different cases. And in Colorado River, that was the predominant feature. But Moses Cohen also goes on to say, talking about the predominance of local issues, which is another thing that you have here. I'm sorry. I mean, it seems to me you have a very good argument for abstention, if this is just a practical judgment about efficient use of judicial resources. But it's a much, it's obviously a much tougher argument if the standard is something like what the chief judge has been suggesting to you. And I'm having a hard time seeing, as much sense as it makes to say, well, the superior court case was much farther along. There could be duplication of effort or inconsistent judgments. All of that seems to me will happen in virtually every case where there are parallel proceedings. So to me, if you're right about truly exceptional, it has to be because there's something special about the state law issues that Judge Kelly thought really should be decided by a state court judge. And we have those here, Judge Katsas. I mean, you have the questions involving, did DCRA have the authority to issue the raise notice? Did DCRA have to conduct its own investigation as to whether the building was the cause of the crack in the sewer? Did DCRA have to conduct its own investigation to determine whether it was, whether the repairs to the sewer were sufficient to allow the building to stand? All those are part and parcel. Other questions, which are replete in the federal claim as well, having to do with, you'll notice there are paragraphs after paragraphs of what pinpoint underground, which is the marking contractor to DC Water, what it did and didn't do, and whether the assumption in the briefing in this case is that that's a non-delegable duty. Well, you have a decision in the superior court that says, no, in fact, that is a delegable duty. So, you know, all these issues of not only local law, but issues of first impression local law, as this court said in the Handy case, those are most suitable for the local court, in this case the superior court. Now, Judge Garland pointed out that this court has, by my count, thrice addressed Colorado River, and in each case has said, no, there is no Colorado River abstention. The first case is Hoy, in which the federal claim is under a federal statute in federal court. The state court has nothing to, there is no federal claim in the state court. And what this circuit said was the judge, when he invoked Colorado River, didn't even go through the factors. Then we get to the Ryman case. Well, but we also said he couldn't have invoked it, and he would have been reversed if he had. Well, of course, because there you have a statutory claim in federal court, and then you have a breach of contract claim or standard state court claim. You don't have any federal claim in the superior court. So that doesn't even get to the parallel case issue. So then you have Ryman, which, again, is a case in which this court actually remanded for more fact-finding because the court didn't go out of its way to analyze the factors. It didn't go out of its way. The court had one sentence, which said Colorado River means we're getting rid of this case. That's all. Right. Well, I'm trying understatement, Your Honor. And then in handy, once again, you have a situation in which the court determined that, boy, this seems like a district judge, with all respect, who seems to be punting a case. And there's nothing more. That is not this case, where you had all of these claims. And the federal claims, by the way, cannot be determined without all of these state court issues involved, because the essence of the federal claim, when you look at them, is that D.C. Water knew something about the engineering and misrepresented the engineering reports to DCRA, and there was a conspiracy as a result of that, and that led to all these constitutional deprivations. So don't buy for a second Edge's claims. I'm not sure that the federal claims do depend that much on state law. They depend very much on what actors in the state system did. But, I mean, normally a state's violation of its own laws does not create a due process problem. True. And so I think the ability of the federal case to go ahead significantly independently of state law issues is being neglected here. Well, with all respect, Judge Williams, you know, we again get back to the statutory issues of D.C. Code that go to these questions in terms of did, were the procedures followed for, you know, for the raise permit? Or, you know, did D.C. Water Don't we have to do that, assume that no case had been brought in the state court. Right. Whenever there is a claim of a violation of due process, a plaintiff has a property right. And that always involves, under Supreme Court law, that almost always involves an analysis of state law, of what entitlements people have under state law. And sometimes state law isn't enough, as Judge Williams said, so that doesn't get them there. Expectations under state law, et cetera. Every time the Supreme Court decides a taking without due process, it has to evaluate state law. That's the bread. That is the garden variety job we do whenever we do state law due process cases. Fair enough. But here's the difference in this case, is it's not enough to say, do you have a property right in this. In its briefing, Edge makes the assumption that it's going to win on that issue. It is a highly contested issue having to do, because here's the quirk in the case. There is, in the reported chain of title, there is not an easement present. But at the same time, the pipe going through and the recordation of a 50-foot right-of-way does exist in the surveyor's office. And through a number of doctrines, that applies to convey to the district and to D.C. Water the rights that Edge is now claiming. So it's a very complicated issue of state law. I don't know that. The question here is who had the rights. Did the person claiming that the rights were taken, did that person have those rights? This is what we do all the time in a due process case. Sometimes it's hard to figure out whether they have the right. Sometimes it's not hard. But being hard can't be the answer. And the issue is not confidence, nor is the issue difficulty. But as Judge Kelly pointed out, you know, Edge brings its counterclaims and its cross-claims in October of 2016. Then in April of 2017, decides to do the same things in a federal action, by which time the train, to use Judge Patsis' phrase, which is very apt, the train had left the station. There had been extensive work on the case. There had been extensive discovery. So how much? How much discovery at the moment the federal case was filed? At that point, there had been, it was primarily document discovery, but extensive document discovery. There had been dispositive motions on these critical issues. You know, the parties are, at that point, the experts had not been disclosed because the parties were working them up based on decisions that are made in that case. And, you know, so the whole thing has moved. And we're now talking about trying an absolutely, you know, an identical but extraordinarily complicated, extraordinarily expensive case again, but under entirely different sets of rules. For instance, Edge can claim that it is not bound by res judicata on the critical issue of the non-delegability to pinpoint because Edge wasn't the party to that summary judgment motion. It had a proxy, Bellow, bring that motion. It was cheering on from the sidelines. So now it will go into federal court and say, yeah, well, now we get to change this around and get a second bite at the apple because we weren't technically the party and res judicata doesn't apply. Again, something very unique to this case that makes this not a garden variety parallel bit of litigation. Well, the district court will certainly be able to defer to the superior court if the district court is persuaded that the superior court's view of D.C. law is correct. Right. So that will resolve that question. And it's not as if we have a court of appeals opinion in the District of Columbia. We just have a superior court position, which is what always happens with trial courts, and one trial court can defer to another if necessary. But we get back to why the Supreme Court came down with Colorado River in the first place. Now you're back to a problem because Moses Cohen and the Supreme Court told us why they did it in Colorado River. Thousands of individual cases about water rights in Colorado and in the West. Far away from where the case was going to be litigated, which is not the case here. Piecemeal litigation in each of thousands of cases, which is not going to happen here. A comprehensive water rights system of both the state and the federal government, which both want it done in the state courts. That's why. Except the Supreme Court, if it wanted to say, we're going to limit this doctrine when a federal statute indicates a congressional preference to try all these actions in one court, that is what we're going to call the doctrine. But it didn't. And in Moses Cohen, it had the opportunity to clarify that and say, when we say exceptional circumstances, we're talking about a statute or we're talking about a long way from the courthouse. And keep in mind, it's not a thousand separate lawsuits. It's a thousand people who all they have to do is show their priority in a water right, which means they tender a piece of paper that said, here's my evidence that I first started drawing irrigation water on June 5th, 1862. That's all there is to it. Here we have extraordinarily complex claims that with all respect, Your Honor, if you're suggesting we now try this again at considerable expense. It hasn't been tried. Has it already been tried? Has this case been tried? It hasn't. It has or hasn't? It has not yet. You just said try it again. Because by having these two cases, you know, we're moving ahead with two separate cases. Both of you have emphasized or discussed at some length the discovery. And is there anything that limits the product of the discovery to a court in which it sort of doesn't take place in court, but agreements in the court file precipitate it or govern it? The products are completely usable across cases. Yes. And if I understand the question right, sure. I'm not suggesting that everybody has to start at square one. The documents that are produced don't morph into something else. Certain of the expert opinions on the engineering could be used. So I understand that. But the critical thing is certain of the critical rulings in terms of what is and isn't going to be allowed in the superior court case could be very different from what is and isn't going to be allowed in this case that's now going on in the federal case. And why should, you know, what the Supreme Court was talking about in Colorado River and repeated in Moses H. Cohn was this desire to, you know, for the wise administration of judicial resources. It didn't say this is so narrow that we're going to allow, unless you have a federal statute that involves water rights, that we're going to allow in violation of rule one this huge morph to have two cases which could be decided maybe with some of the same evidence and maybe some of the same experts, but where you have the same claims and the same essential parties, yet you could have two different outcomes and two different rules of both remaining discovery and adjudication. There have been discovery rulings made in the state court that wouldn't be binding on the federal court. Maybe persuasive, maybe not. But if we're talking about, well, you know, couldn't we just all kind of make use of everything in one setting and not have a do-over, then why aren't we proceeding as Judge Kelly wisely saw fit to do in the state court? Yes, it's true that you don't easily give up federal jurisdiction. What are your best one or two cases from other circuits? We clearly would be going, if we were to affirm for you, we would be going beyond what the Supreme Court and what this court has done. We may not be going beyond what other circuits have done, so what are your best? Tyra versus Beloit is a case from the Seventh Circuit. It's in the brief, I assume. It is in the brief. Tyra, T-Y. I think it's T-Y-R-E-R. T-Y-R-E-R. Okay, there we go, versus the city of Beloit in Wisconsin. And interestingly, you know, that's a case, too, where it involves a city forced demolition of a building and all the rest of it. I'll take a look. Just one more question. Yeah. In terms of parallelism, the RICO count, all of the federal claims seem to me highly parallel, except maybe the RICO count, which is the predicate acts are mail fraud and wire fraud, and I didn't see that there were fraud counts in the Superior Court action. Is that right? Well, they weren't labeled as such, but as Tyra itself makes clear, the labels are unimportant. And what happened in the Superior Court case is that all these claims say that D.C. Water and DCRA conspired by D.C. sending letters to. It's in the conspiracy. Yeah, to DCRA and claiming that the letters were misleading, fraudulent, whatever, whether that word is used or not, because supposedly D.C. Water mischaracterized what the Hillis-Karnes engineering firm said about the exigency of the circumstances. So it's the same beast with a different name, Your Honor. Okay. Thank you. All right. Thank you, Your Honor. Is there remaining time? I'll give you two minutes if you could hold yourself to that since everybody's gone over. Well, we've certainly gone beyond the ten. Judge, quickly, please read Tyra. Read it. In Tyra, that state court litigant litigated a case for four years before they filed a federal case. So if you want to follow Tyra, there's no comparison to Tyra and what happened here. We had a bathe-in-the-woods counterclaim, and in Tyra you had an entire four years of litigation. And Tyra, of course, I think has some mission creep in it, and they have 10 to 12 factors in that decision. I would encourage the Court not to creep away from the Supreme Court's factors. On moving forward, Judge, think about what happens if this case is affirmed. You have a federal judge saying that statutory interpretation is an exceptional duty or exceptionally important. You have a federal judge saying that an issue of delegation is an exceptional circumstance. You have a federal judge saying interpreting D.C. Code 6-801A that says a mayor shall examine the structure is an exceptional circumstance. And you have a judge saying that the public duty doctrine, which has been litigated in this case for 20 years and is probably being litigated today somewhere, is an exceptional circumstance. And then you have a judge saying that he couldn't find any cases on point to process a demolition, and that made the case exceptional. Well, to be candid, Judge, the law clerk said they must have had a bad day. Because if you go into Lexis and you type due process, quotes, plus demolition, you're going to find 50 cases that federal courts have handled, due process cases in the context of a demolition. So I think this judge wanted to get rid of unfavorable case. He doesn't have the right to do that. I don't think it's necessary to impugn the motives. I'm sorry. To be fair to the district judge, this is a question of whether this is fitting for Colorado River or not. To be fair to the district judge, he was looking at other district courts that had done it. And I think the real question is the one you raised, which is whether this is Mission Creek that we should put a stop to. But I don't think we need to worry about the motivations. And I didn't mean to cast this version, Judge. I got a little riled up. What I meant to say was that he didn't follow the mandate and why, where this court said very specifically that the difficulty of a case is not a ballot ground for extension. Thank you very much, Judge. Thank you. We both will take the matter under suspension.
judges: Garland, Katsas, Williams